IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Cr. No. 06-00080 SOM/BMK |
| | ) | Civ. No. 14-00090 SOM/BMK |
| Plaintiff, | ) | |
| | ) | ORDER DISMISSING DEFENDANT |
| vs. | ) | ETHAN MOTTA'S MOTION UNDER 28 |
| | ) | U.S.C. § 2255 MOTION AS |
| | ) | UNTIMELY AND DENYING |
| ETHAN MOTTA (05); | ) | CERTIFICATE OF APPEALABILITY |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**ORDER DISMISSING DEFENDANT ETHAN MOTTA'S MOTION
UNDER 28 U.S.C. § 2255 MOTION AS UNTIMELY
AND DENYING CERTIFICATE OF APPEALABILITY**

I.        **INTRODUCTION.**

        Before considering the merits of Defendant Ethan
Motta's motion for relief under 28 U.S.C. § 2255, this court must
determine whether the motion was timely filed.  Having appointed
counsel for Motta and having held a multi-day hearing dedicated
to the timeliness issue, the court determines that Motta's § 2255
motion was untimely.  Accordingly, the court dismisses Motta's
§ 2255 motion.

II.       **LEGAL CONTEXT.**

        Motta was convicted of a number of racketeering-related
crimes.  The most serious charges were two murder charges and one
attempted murder charge.  The murders and attempted murder
involved shootings that occurred in broad daylight on a public
golf course.  The killings were the culmination of a battle to

control the lucrative business of providing security services at game rooms where illegal gambling was occurring in Hawaii. Motta's conviction and sentence were affirmed by the Ninth Circuit.

Motta is now seeking relief from his mandatory life sentence under 28 U.S.C. § 2255, which provides for a motion by an incarcerated federal defendant to vacate, set aside, or correct a sentence on the ground "that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."

A motion under § 2255 must be filed within one year of the latest of

> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

Motta concedes that the only applicable subsection of § 2255(f) is subsection 1, which sets forth a deadline of one year from the date the judgment became final.  He is not relying on subsections 2, 3, or 4, although he briefly considered relying on one or more of those subsections.  First, he suggested that there had been some impropriety with grand jury proceedings because the grand jury purportedly met on a day when the foreperson was allegedly hospitalized.  In making this suggestion, Motta was apparently unaware that the deputy foreperson could preside and that proceedings could occur in the foreperson's absence provided a quorum of sixteen of the twenty-three grand jurors was present.  Upon being informed of this at the hearing on May 12, 2015, he clarified that he was not relying on any grand jury impropriety.  Second, he suggested that he received newly discovered evidence on or around February 18, 2014, but subsequently withdrew any argument relating to such evidence.  <u>See</u> ECF No. 1658 ("This is to inform the Court that Defendant does not have a basis to argue 28 USC § 2255(f)(4) as an alternative basis for extending the 2255 deadline").

For purposes of § 2255(f)(1), a judgment becomes final "when the Supreme Court 'affirms a conviction on the merits on direct review or denies a petition for a writ of certiorari, or when the time for filing a certiorari petition expires.'"  <u>United</u>

States v. Aguirre-Ganceda, 592 F.3d 1043, 1045 (9th Cir. 2010)
(quoting Clay v. United States, 537 U.S. 522, 527 (2003)).

Motta filed a certiorari petition with the Supreme
Court, which denied Motta's petition on February 19, 2013.  In
Patterson v. Stewart, 251 F.3d 1243, 1246 (9th Cir. 1001), the
Ninth Circuit applied Rule 6(a) of the Federal Rules of Civil
Procedure to determine how to calculate the one-year period for
the filing of a habeas corpus motion brought under 28 U.S.C.
§ 2244 by a state prisoner whose conviction was final before the
enactment of the Antiterrorism and Effective Death Penalty Act of
1996.  Under Rule 6(a), to calculate time periods stated in days
or longer, one excludes the day of the event that triggers the
period but includes the last day of the period unless it is a
Saturday, Sunday, or legal holiday.  The Ninth Circuit concluded
in Patterson that the "anniversary method," which is easy for
petitioners, attorneys, and courts to apply, was appropriate.
Id.; see also United States v. Hurst, 322 F.3d 1256, 1261 (10th
Cir. 2003) (applying "anniversary method" under Rule 6(a) to
determine timeliness of § 2255 motion); Alfaro v. Woodring, 2009
WL 1155668, *1 (E.D. Cal. Apr. 29, 2009) (same).  Applying the
"anniversary method" to Motta's § 2255 motion, the court
concludes that Motta had until February 19, 2014, a Wednesday, to
file his § 2255 motion to comply with the one-year limitation

period set forth in § 2255(f)(1).  Motta does not dispute that
the one-year period ended on February 19, 2014.

Motta could have met that deadline by placing his
§ 2255 motion into the prison mail by February 19, 2014.  Under
the "prison mailbox rule," "a pro se prisoner's filing of a . . .
habeas petition is deemed filed at the moment the prisoner
delivers it to prison authorities for forwarding to the clerk of
the court."  Noble v. Adams, 676 F.3d 1180, 1182 (9th Cir. 2012)
(quoting Stillman v. LaMarque, 319 F.3d 1199, 1201 (9th Cir.
2003)).  Motta did not submit his § 2255 motion by February 19,
2014.  In fact, Motta has admitted that the earliest he may have
submitted his § 2255 motion to prison staff was late at night on
February 20, 2014, after the prison mailing deadline for the day.
This meant that it would be logged as received by the prison
mailing system on February 21, 2014, two days after the deadline.

Because Motta did not timely place his § 2255 motion
into the prison mail system, Motta must demonstrate that the
limitation period should be equitably tolled, albeit for a very
brief period.  See United States v. Castro-Verdugo, 750 F.3d
1065, 1071 (9th Cir. 2014) ("after the one-year statute of
limitations has passed, we may consider a § 2255 motion to
vacate, set aside, or correct a sentence only if the petitioner
establishes eligibility for equitable tolling by showing (1) that
he has been pursuing his rights diligently, and (2) that some

5

extraordinary circumstance stood in his way and prevented timely filing." (quotation marks and citations omitted)); <u>United States v. Aguirre-Ganceda</u>, 592 F.3d 1043, 1046 (9th Cir. 2010) ("Even though Aguirre's section 2255 motion was untimely, we may toll the one-year limitation period if (1) the petitioner has diligently pursued his rights, and (2) extraordinary circumstances exist."). "[T]he threshold necessary to trigger equitable tolling . . . is very high." <u>Mendoza v. Carey</u>, 449 F.3d 1065, 1068 (9th Cir. 2006).

Motta fails to show that equitable tolling applies.

**III.     THE RECORD RELEVANT TO EQUITABLE TOLLING.**

**A.     Overview.**

The crux of Motta's argument, as explained by Motta's counsel and confirmed by Motta in statements at a hearing on May 12, 2015 (as clarified in a letter of May 26, 2015, ECF No. 1658), is that his § 2255 motion should be deemed timely filed because the printer/copier made available to inmates by prison authorities was not in working order for the entire week that included his deadline. He contends that the limitation period should be equitably tolled because this was a circumstance beyond his control that he says prevented his timely submission of his motion.

Motta concedes that, absent equitable tolling, his § 2255 motion was due on February 19, 2014, and that he missed that deadline.

In evaluating Motta's argument that the one-year limitation period should be tolled because of the broken printer/copier, the court relies on three categories of information: (1) this court's extensive opportunities to observe Motta over the years since this case was filed, (2) Motta's <u>pro se</u> written submissions on the timeliness issue, and (3) evidence presented during a multi-day hearing the court conducted on the timeliness issue, during which Motta was represented by court-appointed counsel.

### B. Observations of Motta.

With respect to the first category (i.e., the court's opportunities to observe Motta over the years), the docket sheet in this case, which reflects over 1600 entries, establishes that this has been a case requiring considerable attention by this court.

The charges made Motta and two of his many co-defendants eligible to receive the death penalty, and proceedings relating to that eligibility consumed the period immediately following the filing of the First Superseding Indictment. Eventually, the Government decided that it would not seek the death penalty. With Motta and two co-defendants facing

7

mandatory life sentences if convicted, trial preparation began in earnest.

The court observed that Motta was highly engaged in his own defense. Motta has a bachelor's degree from the University of Hawaii at Hilo, where he served as student body president. Testimony of Ethan Motta, March 4, 2009, ECF No. 1246, PageID # 10858 ("I went to University of Hawai'i at Hilo. And that's where I graduated with a bachelor in political science.") and PageID # 10859 ("I was on the student--student body government. I was the president of the university for several years."). He demonstrated repeatedly to the court that he was intelligent and articulate.

The court first heard him make statements under oath when he pled guilty with a plea agreement on February 11, 2008. See ECF No. 718. At his change of plea hearing, Motta told this court, "At the Pali Golf Course it was my actions that contributed to the death of Lepo Taliese and the attempted murder of Tino Sao." See Transcript of Proceedings (Feb. 11, 2008), ECF No. 773, PageID # 4290. He said that he overreacted in shooting and killing Lepo Taliese, and that he shot Taliese and Tino Sao because he felt they threatened his position in the RICO enterprise. Id., PageID #s 4290, 4293. He did not contradict his attorney's statement to the court that the facts did not support a self-defense claim. Id., PageID # 4291.

Ultimately, that guilty plea was withdrawn when the court rejected the plea agreement in which Motta and the Government had agreed to a sentence of 27.5 years. See ECF No. 866. The court noted that, although the Government had filed a motion for downward departure, it simply recited the agreement concerning 27.5 years without identifying any substantial assistance to the Government. See id.; see also ECF Nos. 814, 841. Concluding that, absent substantial assistance, it could not impose a sentence of 27.5 years and instead was required to impose a sentence of life in prison, the court offered Motta an opportunity to withdraw his guilty plea. Motta and the other two co-defendants elected to reinstate their pleas of not guilty and to go to trial. See ECF No. 866.

Subsequently, one of those co-defendants entered into a new plea agreement with the Government that included the Government's offer to move to dismiss the counts carrying a mandatory life sentence and so allowed the imposition of a sentence of 27.5 years without a substantial assistance motion. The caption on documents relating to that new plea agreement includes Motta's name, apparently because the same agreement was offered to Motta and another co-defendant, but neither accepted the offer. See ECF No. 1 in United States v. Joseph, Crim. No. 08-00576 SOM (D. Haw. Sept. 24, 2008).

Testimony and argument in the jury trial spanned eighteen days. Motta testified on March 4 and 5, 2009, giving this court further opportunities to observe him under oath. Motta claimed that he shot his victims in self-defense, and that he had not planned to shoot them. See Transcript of Proceedings at 14-48 to 14-51 (March 4, 2009), ECF No. 1246, PageID # 10899-902 (while hugging Sao, Motta saw a truck with several men coming towards them; Taliese moved toward Motta, saying something in Samoan that could have been "Hold 'em," and reached into a bag, causing Motta to run back to his car, grab a gun, and shoot). In convicting Motta, the jury necessarily rejected his claim of self-defense.

Convicted of the charges carrying a mandatory life sentence, Motta was sentenced to life in prison. He appealed, and the Ninth Circuit affirmed his conviction and sentence. Motta sought review by the Supreme Court. On February 19, 2013, the Supreme Court denied certiorari. As noted earlier, Motta's § 2255 motion was therefore due by February 19, 2014.

Although Motta has been represented by numerous attorneys in this case, he has, for certain purposes, represented himself. His pro se filings play a critical role in the present ruling, as the court explains in the next section of this order. However, no one should think for an instant that Motta was short on lawyers.

When this case began in 2006, Motta was represented by Todd Eddins, an experienced criminal defense attorney appointed under the Criminal Justice Act ("CJA").  The court also appointed Michael Burt as learned capital counsel, terminating that appointment after the Government announced that it would not seek the death penalty.  For trial, Motta discharged Eddins and retained Charles Carnesi from out of state, with Walter Rodby as retained local counsel.  After he was convicted, Motta sought new CJA counsel for sentencing, and the court appointed Richard Pafundi.  On appeal, Motta was represented by CJA counsel Georgia McMillen.  Without involving the court, Motta obtained the services of Jeffrey T. Green, of Sidley Austin LLP, to represent him in seeking certiorari.  Representing himself, Motta then filed post-appeal motions for new trial, asserting that he had newly discovered evidence.  He eventually retained Myles Breiner to represent him in drafting a reply memorandum in support of his new trial motions.  Motta subsequently opted to withdraw his new trial motions and to focus entirely on his pro se § 2255 motion.

Motta filed several documents pro se relating to the timeliness issue, but, once the court decided to hold an evidentiary hearing on the timeliness issue, the court appointed Richard Gronna from the CJA panel to represent Motta.  Motta became unhappy with Gronna and sought new CJA counsel.  The court, while admonishing Motta about the number of CJA attorneys

he had run through, appointed Megan Kau, who represented Motta during the evidentiary hearing on timeliness.

Motta took the stand during the evidentiary hearing, giving this court its third opportunity to observe Motta under oath.

The court has also heard from Motta when he has not been under oath, as he has sometimes spoken up from counsel's table. In addition, he recently spoke passionately over the telephone during the on-the-record proceeding on March 2, 2015, that resulted in the replacement of Richard Gronna as the CJA attorney who would represent him on the timeliness issue. Thus, this court has had an unusually ample basis on which to judge what credence to give to Motta's statements.

For reasons detailed in the pages that follow, the court does not believe Motta's assertion that the broken printer/copier caused him to miss his deadline of February 19, 2014. While the court accepts that the inmates' printer/copier was indeed broken during the week in which the deadline fell, the evidence that the court does believe leads the court to find that Motta missed his deadline because he thought his § 2255 motion was due on a date later than February 19, 2014. Because Motta was mistaken as to his deadline, he would not have submitted his motion by February 19, 2014, even if the printer/copier had been in perfect working order that week.

The court precedes its detailed review of Motta's pro se written filings and the evidence presented during the hearing with this summary of the multiple opportunities it has had to observe Motta because those opportunities cannot be divorced from this court's evaluation of the pro se filings and the evidence. The court's view of Motta's credibility as to the timeliness issue is consistent with and grounded in its numerous observations of Motta himself.

### C. Motta's Pro Se Filings.

On February 24, 2014, this court received Motta's § 2255 motion ("Original Motion"). See ECF No. 1534. The Original Motion was mailed from United States Penitentiary Lee in Virginia. This Original Motion included Motta's declaration under penalty of perjury that he had placed the Original Motion into the prison mail system on February 21, 2014, which is consistent with the postmark on the mailing envelope. See ECF No. 1534, PageID #s 16158 and 16160. The Original Motion included a transmittal letter to the Clerk of Court stating that Motta was sending the Original Motion to be filed. The transmittal letter was dated and bore what appeared to be a computer designation of "02/20/2014 11:06:27 AM." See ECF No. 1534-1, PageID 16159.

On the same day this court received the Original Motion, this court received Motta's "Motion Seeking Leave to File 2255 Petition Pro se." See ECF No. 1535. In this Motion Seeking

13

Leave, Motta expressed concern that his pro se papers might be rejected because Myles Breiner was listed as his counsel.[1] Motta hastened to explain that counsel had been retained to represent him only in connection with his motions for new trial and motion to recuse this judge, not for § 2255 purposes. The Motion Seeking Leave to File 2255 Petition Pro se included the following statement: "Defendant brings forth the following motion because he is caught in a bit of a legal dilemma and seeks the Court['\]s guidance to insure his **February 22, 2014 due date** is met and his 2255 Petition is timely filed." Id., PageID # 16161 (boldface added).

On February 27, 2014, the court received from Motta a second § 2255 motion, which the court construed as a "Supplement" to the Original Motion, rather than as a second motion. The

---

[1]Motta may have been concerned on this point because the court had earlier said that it would not consider pro se filings from a represented party. See Order Denying Rule 34 Motion, March 29, 2011, ECF No. 1334, PageID # 13430 ("The court additionally notes that, as long as Motta is represented by counsel, he may not file documents pro se. See Local Rule 99.7.10(h)."); Letter dated November 5, 2013, ECF No. 1516, PageID # 15921 ("Because you are represented by counsel, I will not entertain any request directly from you. You cannot both represent yourself and have counsel."); Local Rule 99.7.10(h) ("Absent exceptional circumstances, when a prisoner is represented by an attorney, the prisoner shall not communicate directly with the court or a judge by sending the court or judge letters, requests, or motions, or calling or faxing the judge. All communication shall be through the prisoner's attorney. Any communication sent directly to the court or judge by a represented prisoner may, in the court's sole discretion, be disregarded and stricken from the record.").

Supplement is identical to the Original Motion, with the exception that it adds a handwritten section concerning the timeliness of the document. Compare ECF No. 1534 with ECF No. 1538. The additional handwritten language notes that Motta's prison facility was on lockdown status beginning Thursday, February 20, 2014. See ECF No. 1538, PageID # 16213. It also notes that Motta had earlier placed a copy of his § 2255 motion in the prison's regular mailbox in the hope that the regular mail might go out because "PRISON IS STILL ON LOCKDOWN FRIDAY, FEB. 21ST." See ECF No. 1538, PageID # 16213.

The Supplement includes a copy of Motta's dated signature and his certification under penalty of perjury that the document was placed in the prison mail system on February 21, 2014. See id, PageID # 16214. It also contains the identical transmittal letter to the Clerk of Court that was included with the Original Motion, dated "02/20/2014 11:06:27 AM." See id., PageID # 16215. The Supplement has a certified mail receipt attached to it with a handwritten notation of "2-21-14," as well as a certification from the prison facility that it was placed in the prison mail system on "2/21/14." See id., PageID #s 16216-17. Consistent with the postmark on the envelope, see id., PageID # 16216, the United States Postal Service website indicates that it received the certified letter for mailing on February 24, 2014.

The Supplement itself suggests that, in placing the Supplement into the prison mailing system on February 21, 2014, Motta believed that his one-year limitation period had not yet expired. Thus, the Supplement states that the only way Motta's § 2255 motion would be untimely was "IF THE FACILITY REMAINS ON LOCKDOWN STATUS AND MOVANT IS UNABLE TO HAND DELIVER . . . [THE MOTION] TO THE PRISON MAILROOM TO HAVE IT SENT OUT VIA CERTIFIED MAIL AT 7am VIRGINIA TIME." See ECF No. 1538, PageID # 16213.

On March 10, 2014, the Government filed its response to Motta's Motion Seeking Leave to File 2255 Petition Pro Se. That response noted that Motta's § 2255 motion was untimely, having been filed more than a year after the certiorari petition was denied. The Government noted that Motta was untimely even under the "prison mailbox rule" set forth in Houston v. Lack, 487 U.S. 266 (1988), and Stillman v. Lamarque, 319 F.3d 1199, 1201 (9th Cir. 2003). See Government's Response to Defendant Ethan Motta's Motion Seeking Leave to File § 2255 Petition Pro Se, March 10, 2014, ECF No. 1542, PageID #s 16230-31.

As directed by the court, Motta addressed the Government's contention that his § 2255 petition was untimely in a document filed on May 19, 2014. See ECF Nos. 1545, 1562. This filing preceded the evidentiary hearings this court held concerning the timeliness issue and affected how this court viewed the oral testimony.

16

In his filing of May 19, 2014, Motta said that the only notice he had received as to when certiorari had been denied was an e-mail from the Sidley Austin law firm dated February 20 or 21, 2013. See id., PageID # 16409. Motta also said that, on Monday, February 17, 2014, he had spoken with a family member who told Motta that a private investigator hired by the family had obtained 3000 pages of what Motta termed "discovery." See id., PageID # 16410. According to Motta, he went to the prison library on Tuesday, February 18, 2014, to add references to the 3000 pages of material to his § 2255 motion. Unfortunately, when he went to print the document that day, he found that the printer/copier available for inmates was out of order. Id. Motta says that he then looked for a blank § 2255 form to fill out without using the printer/copier, but was told no blank form was available and none could be made because the printer/copier was not working. See id., PageId # 16410-11. Motta said he waited in the library until 8:45 p.m. on Tuesday, February 18, 2014, hoping that the machine would get fixed. Id., PageID # 16411.

According to the May 19, 2014, filing, Motta went back to the library and was able to get a blank § 2255 form from another inmate at approximately 9:30 a.m. on Wednesday, February 19, 2014. Id. Motta said that he used the typewriter in the library until that became unavailable and then wrote out the rest

17

of his § 2255 motion by hand.  See ECF No. 1562, PageID # 16411-12.  Motta also said that he eventually got a kitchen supervisor to make him a copy of his § 2255 motion.  Id., PageID # 16412. Motta explained that he had not changed the post-dated signature or certificate of service (dated February 21, 2014) and that he handed the motion to a prison guard on the night of Wednesday, February 19, 2014.  See id.  Nothing in the filing of May 19, 2014, addressed how Motta could have handed the Original Motion to a guard on the night of February 19, 2014, when the transmittal letter bore what appeared to be a computer-generated date- and time-stamp of February 20, 2014.

In his May 19, 2014, filing, Motta said that he filed his Supplement because his prison facility was placed on lockdown on February 20, 2014.  Id.  He said that, in an abundance of caution, he "saw the need to send out a second set of 2255 forms on February 20th, 2014 just in case the first 2255 motion was not sent out for whatever reason."  Id., PageID # 16412-13. Contradicting a statement in the same document, Motta at one point says that he handed the Supplement to a guard at approximately 11 p.m. on February 20, 2014.  Id., PageID # 16413. However, the Supplement itself mentions that the lockdown was still in effect on February 21, 2014.  Either Motta was only predicting that the lockdown would still be in effect on February 21, 2014, or Motta was incorrect in asserting that, on February

18

20, 2014, he handed to a guard the document referring to a continuing February 21 lockdown.

Motta very clearly states in his filing of May 19, 2014, that he had retained Myles Breiner to represent him only with respect to new trial motions under Rule 33 of the Federal Rules of Evidence, not with respect to a § 2255 motion. See ECF No. 1562-9, PageID # 16441 ("I know Myles was only retained to handle my Rule 33 proceedings and not my 2255 petition or Habeas proceedings.").

On May 27, 2014, the court issued a detailed Order To Show Cause, asking Motta to address why his § 2255 motion should not be dismissed as untimely. See ECF No. 1565.[2] Because there were documents in the record inconsistent with Motta's meeting of his deadline of February 19, 2014, the court told Motta that he had to demonstrate that the one-year limitation had not expired or that it should be equitably tolled. See id., PageID #s 16476-77.

On July 14, 2014, Motta responded to the Order To Show Cause. See ECF No. 1577. Motta indicated that, on Monday, February 17, 2014, he went to the prison library, but it was closed. Id., PageID # 16523. (That day happened to be

_____

[2]The Order to Show Cause erroneously referred on page 10 to a transmittal letter with a date and time of May 20, 2014, at 11:06:27 a.m. See 1565, PageID # 16477 (citing ECF No. 1534-1, PageID # 16159). The transmittal letter was actually dated February 20 2014.

Presidents' Day.)  Contradicting his earlier statement that a family member told him about "discovery" that day, Motta said he actually received about 3,000 pages of "discovery" that same day. Motta said he went to the library early the next morning, Tuesday, February 18, 2014, to add information about that "discovery" to his § 2255 motion.  Id.  According to his filing of July 14, 2014, when he went to print out his completed § 2255 motion on February 18, 2014, he could not do so because the printer/copier was out of order.  Id., PageID # 16524.

Motta says he then began to search for a blank § 2255 form and found that the prison law library was out of those forms.  Id.  Motta says he remained in the library until 8:45 p.m. on February 18, 2014, hoping that the printer/copier would be fixed or that he would be able to get a blank § 2255 form. Id.

Motta describes returning to the prison library the morning of February 19, 2014, feeling "helpless and limited knowing his 2255 petition needed to be sent out that very day." Id.

This statement of knowledge of the deadline of February 19, 2014, cannot be squared with (1) Motta's statement in his Supplement that he believed that the only way his § 2255 motion would be untimely would be if the prison facility remained on lockdown beyond Friday, February 21, 2014, preventing him from

handing his motion to a guard, see ECF No. 1538, PageID # 16213,
or (2) Motta's statement in his February 24, 2014, Motion Seeking
Leave that identified his deadline as February 22, 2014. See ECF
No. 1535.

In his response of July 14, 2014, Motta reported that,
on February 19, 2014, he got a blank § 2255 form from a prisoner
named "Ratcliffe." See ECF No. 1577, PageID # 16526. Motta said
that he began filling out the form on a typewriter in the
library. After the library closed, Motta says he finished
filling out the form by hand, completing it by the 4 p.m.
lockdown. Id.

Apparently conscious that some of his earlier
statements were inconsistent with any claim that he tried to send
out his § 2255 motion by February 19, 2014, Motta says in his
filing of July 14, 2014, that he had previously made a mistake in
stating that he handed the § 2255 motion to a guard on the night
of Wednesday, February 19, 2014. Correcting himself, he says
that, because he was unable to make any copies of his § 2255
motion, he "was unable to give his one and only copy to the
evening officer before lockdown on [W]ednesday night in fear that
his only copy would be lost or misplaced in the mail." Id.,
PageID # 16527.

This alleged fear is inconsistent with the record in
this case. On other occasions, Motta has sent the court his only

copy of documents and asked the court to make him copies and send them to him.  See, e.g., ECF No. 1387, PageID # 14333 (letter received by Clerk of Court on June 4, 2012, stating, "could you also send me a copy of my first motion for 'Specific Request for Discovery' as I sent the Court my one and only original copy after the prison's copy machine had a nervous breakdown and I was unable to make an extra copy for my records"); see also ECF No. 1397, PageID # 14519 (letter from Motta to court received on June 14, 2012, asking for copies of documents).

Finally, in his filing of July 14, 2014, Motta says that he approached the kitchen supervisor on February 20, 2014, to get copies.  See ECF No. 1577, PageID # 16527.  Motta says that the kitchen supervisor did make copies, after which Motta put his § 2255 motion in a manila envelope, affixed postage to the envelope, and handed the envelope to the evening officer to be placed in the mailbox.  Id.  Motta says that, about an hour after he gave the officer the envelope containing the § 2255 motion, there was a violent altercation that resulted in a lockdown that began that night, February 20, 2014.  Id., PageID # 16528.  Motta says that the facility remained on lockdown the following day, February 21, 2014.  Id.

**D.    Evidentiary Hearings.**

This court held a hearing on the timeliness issue. Motta was flown at the expense of the Judiciary from Virginia to Honolulu to be at the hearing.

There is no dispute that the printer/copier for inmates to use was broken during the week of February 16, 2014.  David Ratcliff, another inmate at Motta's facility who volunteered in the prison library, testified at the hearing held on April 10, 2015, that the machine was indeed broken. The out-of-order status was also confirmed by a prison memorandum indicating that the machine was not working during the week of February 16 to 23, 2014.  See ECF No. 1562-11, PageID # 16446 (a copy of this memorandum was admitted as Exhibit 1 at the hearing on April 10, 2015).  Lance Jay Cole, a Bureau of Prisons employee who staffed the library, also testified that the machine was broken the week of February 16, 2014.

Motta testified on April 10, 2015, that he had drafted his § 2255 motion on an electronic device called a "Neo."  This was apparently a kind of portable word processor that an inmate could ask to take to his cell to use.  There were a number of Neo devices that inmates could use.  Ratcliff explained that a Neo had only a very small display screen, not large enough to show even a multi-sentence paragraph.  It did not allow internet research.  The printer/copier made available for inmate use could

print documents drafted on a Neo, but, for the most part, the prison's other copy machines were not set up as printers for any Neo.

Cole testified that, when the inmates' printer/copier was not broken, inmates had unrestricted access to the machine and could print out documents as long as they had money to cover the costs of printing. Cole testified that, when that machine was broken, inmates could ask to use the staff machine, but had to have a compelling reason to do so. Ratcliff testified that the inmates' printer/copier was often broken, as prisoners removed parts to use to make other things. Cole agreed that the printer/copier was so often out of service that inmates knew that they might not be able to use it.

Cole said that his staff was usually generous in providing inmates with documents using the staff machine. Cole also noted that inmates had access to copy machines in their units. Cole's recollection was that the prison law library was, in fact, open on Presidents' Day, Monday, February 17, 2014.

Ratcliff testified at the hearing on April 10, 2015, that the prison law library had had blank § 2255 forms available in January 2014 and before. He testified that Motta did not ask for a blank § 2255 form until February 19, 2014. Ratcliff recalled that Motta knew in January 2014 that his § 2255 motion was due the next month.

Both Ratcliff and Cole testified about prison lockdowns. Radcliff reported that lockdowns were frequent, and that inmates knew that, when the prison was on lockdown, "nothing happens."

During the evidentiary hearing on April 10, 2015, Motta testified, consistent with at least a portion of his pro se filings, that, on Monday, February 17, 2014, he received thousands of pages of documents. He said that, although the prison law library might have been open at some time on Monday, February 17, 2014, it was not open when he tried to go to it that evening.

Motta also testified that he incorporated references to those thousands of documents into his § 2255 motion on Tuesday, February 18, 2014. Consistent with his pro se filings, he testified that, when he went to print out his § 2255 motion from the Neo on February 18, 2014, he found the inmates' printer/copier broken. Motta testified that Ms. Ramos, a prison employee, refused to allow him to use the staff machine to print out his § 2255 motion.

According to Motta's testimony, he received, on Wednesday, February 19, 2014, an e-mail from a friend regarding the grand jury that had indicted him. Motta says he wanted to add that information to his § 2255 motion. Although he said that his § 2255 motion was completed on February 19, 2014, he also

testified that he filled out part of the § 2255 form in his cell on February 20, 2014. Eventually, Motta conceded on cross-examination that, as of February 19, 2014, he wanted to add a few more things to his § 2255 motion.

Motta admitted on cross-examination that he did not know exactly when his § 2255 motion was due, contradicting his earlier statement that he knew it was due on February 19, 2014. Motta also admitted that, between February 20 and February 22, 2013, he was notified by his attorneys that his certiorari petition had been denied "a few days ago." Motta thus should have known that his motion might be due "a few days" before the period beginning on February 20, 2014.

The only way to make sense of what is in the record is to view Motta as having wrongly assumed that his deadline was February 22, 2014. Motta's admissions on cross-examination are consistent with the date and time stamp on his transmittal letter for the Original Motion, "02/20/2014 11:06:27 AM," see ECF No. 1534-1, PageID 16159, which Motta testified was automatically generated at the time he began drafting the document. They are also consistent with (1) his Supplement (mailed on February 21, 2014), which stated that the only way his motion would be untimely was if the prison remained on lockdown status and he was unable to deliver the motion to the prison mailroom, and (2) his Motion Seeking Leave filed on February 24, 2014, in which Motta

referred to his deadline as February 22, 2014. See ECF Nos. 1535, PageID # 16161, and 1538, PageID # 16213.

While Motta submitted affidavits of other prisoners, none of them establishes that Motta realized that his § 2255 motion was due by February 19, 2014. At most, they show that Motta was concerned about an upcoming deadline around that date.

For example, the Sworn Affidavit & Declaration of Truth of Michael Green only states that, on or about February 17, 2014, Motta told him that his § 2255 motion was due in several days. This does not indicate that Motta knew his § 2255 motion was due precisely by February 19, 2014.

The Sworn Affidavit & Declaration of Truth of Donald Thomas is similarly unpersuasive. Although Thomas says that there is no doubt in his mind that Motta would have timely filed his § 2255 motion had the printer/copier not been broken, he does not directly say that Motta knew his deadline was February 19, 2014.

The Sworn Affidavit & Declaration of Truth of Clark Brooks is also unhelpful. At most, Clark states that, on February 19, 2014, Motta was looking for a blank § 2255 form and explained the urgency of the situation. Without more, the court cannot conclude from Brooks's declaration that Motta believed his motion was due by February 19, 2014.

Motta testified that he was able to make copies of his Original Motion on February 20, 2014. Motta testified that he gave the Original Motion to officer "Fannon" about midnight on February 20, 2014.

Exhibit 3, a "draft" of an e-mail dated February 18, 2014, at 9:31 p.m., from Motta to an attorney in Myles Breiner's office, referred to Motta's § 2255 motion as already completed:

> I am sending you a copy of my 2255 petition I
> filed in the event the District Court bars me
> from filing this petition on a pro se basis.
> If for whatever reason the District Court
> does not accept my pro se 2255 filings could
> you please have Myles [Breiner] sign and date
> the back of the 2255 petition form and send
> it back to the Court so my petition can be
> accepted and filed without any ramifications.

In cross-examination testimony given on April 10, 2015, Motta claimed that, when he drafted this unsent e-mail on February 18, 2014, his motion was already done and he was ready to send it out. This e-mail, which was never sent, suggests that Motta thought his motion was not due for several more days, as the e-mail refers to a motion that Motta intended to send to his attorney. Notably, the draft e-mail does not attach the § 2255 motion. In is unclear to the court whether such an attachment of a Neo document was possible. In any event, Motta in response to questions from the court on April 10, 2015, said that, at the time he drafted the e-mail, he planned to mail his motion to his

attorney.  In fact, Motta testified he hoped to get it out to his attorney in the mail on February 19, 2014!

Any motion mailed to counsel would not have been considered filed as of the date it was placed in the prison system, as the prison mailbox rule only applies to documents mailed to the court.  See Hernandez v. Spearman, 764 F.3d 1071, 1074 (9th Cir. 2014) ("To benefit from the mailbox rule, (1) a prisoner must proceed without counsel, and (2) the petition must be delivered to prison authorities for mailing to the court within the limitations period.").  Instead, if counsel had filed a motion mailed to counsel by Motta, the motion would have been treated as filed on the date counsel submitted it to the court. That date would not likely have been February 19, 2014, even if the motion had been mailed by Motta to counsel on February 18, 2014, as the court is unaware of any guaranteed overnight delivery between Virginia and Hawaii, whether via the United States Postal Service's express mail or via a private courier service.  That Motta was planning to mail something to counsel on or around February 18 or 19, 2014, suggests that Motta thought his due date was later than February 19, 2014.

The court ends this section by noting two things that were more important to the court's credibility determination than to any substantive explanation.

First, at the hearing on April 10, 2015, Motta's counsel attempted to introduce a document with a redaction where a name had been. This court asked Motta whose name had been redacted. Motta hesitated before reluctantly saying that it was his sister's name. When the court pointed out that the sentence containing the redaction used the pronoun "he" to refer to the person whose name had been redacted, Motta was stymied. The court finds Motta's identification of his sister not believable. While the identification itself does not establish or contradict timeliness, it left the court with the clear impression that Motta was making things up.

Second, Motta testified that he knew his deadline was February 19, 2014, because he had been informed of that by a friend. This court asked for the friend's identity. Motta was clearly caught off guard and appeared not to want to identify the friend. After a noticeable pause, he named Michael Ornellas. Motta had not earlier named Ornellas as a witness, but, after he reluctantly identified him, did call him as a witness.

Ornellas testified at a continued hearing session on April 24, 2015. Ornellas testified that, in November 2013, he told Motta that his deadline for filing the § 2255 motion was February 19, 2014. Ornellas said he had determined this through online research. Ornellas also recalled having telephoned the prison on or near Valentine's Day, February 14, 2014, to

reiterate to Motta that his certiorari petition had been denied on February 19, 2013.  Ornellas claimed to have been having conversations with Motta pretty much every other day.  The time frame of these conversations is unclear.  According to Ornellas, around Valentine's Day, he also faxed Motta a screen shot of a page from Leagle.com showing that certiorari had been denied by the Supreme Court on February 19, 2013.  Ornellas said he remembered the approximate date he talked with Motta as having been around Valentine's Day 2014 because he recalled having been ill with pneumonia around that time.  Despite being ill, Ornellas recalls having gone to work the day he says he faxed the document to Motta.  The belated identification of Ornellas as a witness and his testimony were extremely problematic in this court's view, and the court did not believe Ornellas.  In particular, it makes no sense to this court that, if Motta knew his deadline was February 19, 2014, Motta failed to put what he had in the mail that day.

IV.     **THE MOTION IS UNTIMELY.**

       A.     **Motta Lacks Credibility.**

Motta is an intelligent, educated man.  He has demonstrated over the course of this lengthy case that he shades the truth if he thinks that is in his best interest.

After the appeals process was completed, Motta knew that his § 2255 motion was due on some date in February 2014.  At

the time he filed his motion, Motta appears to have mistakenly
and negligently believed his motion was due by February 22, 2014.
This is clear from his Supplement, which noted that the only way
his motion would be untimely would be if the prison remained on
lockdown after February 20, 2014.  Similarly, his Motion Seeking
Leave specifically referred to his deadline as February 22, 2014.

There is no dispute that Motta's § 2255 motion was due
no later than February 19, 2014.  When this date was impressed on
Motta by this court and the Government, Motta for the first time
claimed that he had given the Original Motion to a prison guard
at night on February 19, 2014, and described having been panicked
about meeting the deadline of February 19, 2014.  Only after
being confronted with the computer-generated date-stamp and time-
stamp of February 20, 2014, shown in attachments to the Original
Motion and Supplement, did Motta claim that he was mistaken about
having handed the Original Motion to the guard on February 19,
2014, and that he had actually handed it to the guard on February
20, 2014.

Motta was well aware of the need to meet his deadline.
He is too intelligent to have risked losing any chance to pursue
his remedies under § 2255 just to add "icing" on the cake by
taking the time on the night of his deadline to include
references in his motion to 3000 newly received documents.  The
only thing that makes sense to this court is that Motta chose to

take the time to make those additions to his Original Motion because he thought his deadline was February 22, 2014. Otherwise, he would surely have sent out what he had managed to prepare in time to make the February 19 mail. He was understandably dismayed and anxious, even panicked or frenzied, upon finding the printer/copier broken on February 18, 2014, but he still had something as of February 19, 2014, that he could have sent out by that deadline.

In fact, Motta's counsel noted in arguing the timeliness issue during a continued hearing on May 12, 2015, that Motta's § 2255 motion was done on February 19, 2014. Motta expressly agreed out loud with his counsel's factual assertions. He chose working on improving his § 2255 motion over putting anything in the mail on February 19, 2014. This choice is understandable only if Motta thought he had just a small amount of time more, not if he was panicked because the printer/copier was broken.

The court does not believe Motta's claim that he did not mail his only copy of his § 2255 motion on February 19, 2014, out of fear that it would be lost or misplaced. Motta had mailed documents to the court in the past without retaining copies. Similarly, the court does not believe that Michael Ornellas told Motta, around Valentine's Day 2014, that his deadline was February 19, 2014. The multitude of inconsistencies in Motta's

explanations makes much of what he claims incredible.  In rejecting Motta's explanations as unbelievable, the court is relying not only on the substantive problems with the explanations, but also on Motta's demeanor while testifying.  The court's observations of Motta cause this court to reject the possibility that Motta would have missed a deadline if Ornellas told him about it.  When caught off guard during the evidentiary hearing, Motta appeared to be casting about in his mind for a way to account for anomalies.  In short, in terms of both substance and demeanor, Motta displayed a lack of truthfulness.

In finding Motta incredible, the court does not want to be misunderstood as acting on the basis of any personal animus against him.  Instead, this credibility determination is the culmination of this court's observations of Motta in this very case.  There is no impropriety in a judge's reliance on such observations.  See generally Liteky v. United States, 510 U.S. 540, 550-51 (1994) (judge need not recuse when judge forms opinion of defendant based on the course of proceedings).

## B.    Equitable Tolling Does Not Apply.

There is no dispute that Motta's § 2255 motion was due on February 19, 2014.  The credible evidence before this court indicates that, at the very earliest, Motta handed his § 2255 motion to a prison guard at night on February 20, 2014.  As harsh as it is to deny Motta a review of the merits of his § 2255

motion based on a short delay, this court is bound by the one-year limitation period. The court sees no reason to equitably toll the running of that limitation period.

In Castro-Verdugo, 750 F.3d at 1071, the Ninth Circuit noted that, "after the one-year statute of limitations has passed, we may consider a § 2255 motion to vacate, set aside, or correct a sentence only if the petitioner establishes eligibility for equitable tolling by showing (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." (quotation marks and citations omitted); accord Aguirre-Ganceda, 592 F.3d at 1046. Motta shows neither that he was diligent nor that some extraordinary circumstance stood in his way and prevented the timely filing of his § 2255 motion by February 19, 2014.

First, Motta did not pursue his rights diligently. He admitted on April 10, 2015, that, at some point between February 20 and February 22, 2013, he was notified that his petition for certiorari to the United States Supreme Court had been denied "a few days ago." If "a few days ago" referred to two to three days, Motta knew or had facts from which to conclude that his petition for certiorari had been denied possibly on February 17, 2014. Motta also knew he had a one-year limitation period. Motta knew that his attorney, Myles Breiner, was only

35

representing him with respect to motions under Rule 33 of the
Federal Rules of Criminal Procedure and not with respect to the
§ 2255 motion.  Thus, Motta should have worked diligently on his
§ 2255 motion and completed it in time to meet a deadline that he
knew might have been before February 20, 2014.  At the very
least, he should have either worked diligently to determine the
exact date his certiorari petition was denied or mailed his
petition earlier in February 2014 to ensure that it was timely.
In fact, Motta called as a witness Ornellas, who testified that
he gave Motta the correct deadline in November 2013 and then
again around Valentine's Day in 2014.  Motta's failure to either
clarify the deadline or, if he had the deadline from Ornellas, to
meet it shows a lack of diligence.

　　　　Motta also knew that the printer/copier in the prison
law library was often broken, and that his prison was often on
lockdown, which meant "nothing happens."  Yet, by his own
account, Motta did not even attempt to print out a version of the
§ 2255 motion until February 18, 2014.  Motta had a motion that
could have been mailed by February 19, 2014, but continued to add
things to it on February 20, 2014.  Under these circumstances, it
cannot be said that Motta proceeded diligently to try to meet his
deadline.

　　　　Motta has also failed to demonstrate that extraordinary
circumstances prevented him from timely filing his § 2255 motion

on or before February 19, 2014.  At best, Motta says that the printer/copier was down and that he had trouble finding a blank § 2255 form.  Testimony establishes that the machine was often broken and that prisoners knew that.  The blank § 2255 form would have been available to Motta earlier but was unavailable when Motta sought it at the last minute.  The critical fact is that, as stated in his Supplement, Motta believed that the limitation period did not run out until February 22, 2014.

As harsh as this result is, a mistake about a deadline caused by Motta's own lack of diligence cannot be said to be an extraordinary circumstance.  Motta made a mistake about when his deadline was.  It was not the breakdown of the printer/copier that prevented Motta from timely mailing his § 2255 motion.  It was his belief that he had a few more days.

This court has been mindful from the start of its consideration of the timeliness issue of two things.  First, Motta missed his deadline by only two days.  Second, Motta's § 2255 motions was likely his last avenue for challenging a life sentence.  These two things caused the court to begin its inquiry committed to allowing equitable tolling if any facts justified that.  But given the court's review of the facts and its inability to accept many of Motta's own assertions as true, this court cannot find that equitable tolling applies.

**IV.     THE COURT DECLINES TO ISSUE A CERTIFICATE OF APPEALABILITY.**

The court declines to grant Motta a certificate of appealability.  An appeal may not be taken to the court of appeals from a final order in a § 2255 proceeding "[u]nless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(B).  The court is to issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  When a district court denies a § 2255 petition on the merits, a petitioner, to satisfy the requirements of section 2253(c)(2), "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  Slack v. McDaniel, 529 U.S. 473, 484 (2000).  When, as here, a

> district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows . . . that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

Id.  Motta fails to show that "jurists or reason would find it debatable" whether this court is correct in finding that equitable tolling does not apply.

38

This court has determined that Motta is not credible in his assertions. Because no reasonable jurist would rely on incredible assertions, and because the credible facts indicate that Motta made a mistake about his deadline and has not shown that extraordinary circumstances warranted the tolling of the limitation period, this court does not think any reasonable jurist would find debatable this court's determination that Motta's motion is barred as untimely. Given this determination, the court does not examine whether Motta's petition states a valid claim of the denial of a constitutional right.

**V.      CONCLUSION.**

Because Motta did not timely file his § 2255 motion and because he has failed to demonstrate a basis for the equitable tolling of the limitation period, the court dismisses the § 2255 motion as untimely and declines to issue a certificate of appealability. In so ruling, the court denies Motta's motion of May 19, 2014, seeking leave to extend the § 2255 deadline. ECF No. 1563. Any other pending matter is similarly terminated.

The Clerk of Court is directed to enter judgment against Motta and to close this § 2255 action.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, June 16, 2015.



/s/ Susan Oki Mollway
Susan Oki Mollway
Chief United States District Judge

United States of America v. Ethan Motta, et al., Crim. No. 06-00080 SOM/BMK; ORDER DISMISSING DEFENDANT ETHAN MOTTA'S MOTION UNDER 28 U.S.C. § 2255 MOTION AS UNTIMELY AND DENYING CERTIFICATE OF APPEALABILITY